702 F.2d 172
 ATSA OF CALIFORNIA, INC., Plaintiff/Cross-Claimant/Appellant,
v.
CONTINENTAL INSURANCE CO., etc., Defendant,
v.
CAIRO GENERAL CONTRACTING CO., Cross-Defendant/Appellee.
Hamed ABULHASSAN, Counter-Defendant/Appellant,
v.
CAIRO GENERAL CONTRACTING CO., Cross-Defendant/Appellee.
 Nos. 81-6017, 81-6026.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 27, 1982.
Decided March 21, 1983.
 
 Alan M. Mund, Fulop & Hardee, Beverly Hills, Cal., for plaintiff/cross-claimant/appellant.
 Stephen T. Owens, Graham & James, Los Angeles, Cal., Robert E. Currie, Latham & Watkins, Newport Beach, Cal., for cross-defendant/appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON and PREGERSON, Circuit Judges, and SOLOMON,* District Judge.
 PREGERSON, Circuit Judge:
 
 
 1
 ATSA of California, Inc. ("ATSA"), and Hamed Abulhassan, an officer of ATSA, appeal the district court's order staying all proceedings and directing all parties to submit to arbitration in accordance with the written contract between ATSA and Cairo General Contracting Co. ("Cairo").[1] The stay order is appealable under 28 U.S.C. Sec. 1292(a)(1) in accordance with the Enelow-Ettelson rule.[2] Wren v. Sletten Construction Co., 654 F.2d 529, 532-33 (9th Cir.1981).
 
 BACKGROUND
 
 2
 In April 1978, ATSA, a California corporation, and Cairo, an Egyptian corporation, entered into a written agreement under which ATSA would prefabricate and turn over to Cairo a factory for manufacturing building panels and Cairo would pay ATSA $4.1 million.
 
 
 3
 In January 1979, ATSA shipped the components of the prefabricated factory to the Port of Alexandria, Egypt. In connection with the shipment, ATSA purchased marine insurance from Continental Insurance Company of New York ("Continental") specifying that any loss would be payable to ATSA. ATSA then endorsed in blank and transferred to Cairo Continental's certificate of insurance. During the voyage the insured shipment sustained damage.
 
 
 4
 ATSA asserts that, in October 1979, Cairo and ATSA orally agreed that ATSA would repair the damaged items in return for an assignment of Cairo's interest in the insurance proceeds.
 
 
 5
 In May 1980, while Continental was processing the insurance claim, Cairo and Abulhassan executed a written contract providing that Abulhassan would represent Cairo in negotiations with Continental in return for a percentage of any settlement paid by Continental. In November 1980, Continental issued a settlement check for $1.75 million payable to ATSA and Cairo jointly. Cairo refused to endorse the check and turn it over to ATSA, asserting that the prefabricated factory ATSA delivered to Cairo was unacceptable.
 
 
 6
 In January 1981, ATSA filed suit against Continental, alleging that Continental had breached the marine insurance contract by refusing to pay ATSA the insurance proceeds. In March, Continental answered and counterclaimed, interpleading the proceeds of the policy. The district court dismissed Continental and ordered Cairo joined as a defendant. In June, ATSA filed a cross-claim against Cairo alleging five causes of action. Cairo filed its answer in August and pleaded the arbitration clause in its contract with ATSA as an affirmative defense. Cairo also filed counterclaims against ATSA. Cairo drew Abulhassan into the case in August 1981 as a counterdefendant in its counterclaim. Abulhassan then filed cross-claims against Cairo.
 
 
 7
 On November 16, 1981, the district court stayed all proceedings pending a final arbitral award. It ordered ATSA and Cairo each to name a "neutral, disinterested" arbitrator and directed all parties, including Abulhassan, to submit to arbitration "in accordance with the Rules for the International Court of Arbitration promulgated by the International Chamber of Commerce." The court denied Abulhassan's request to appoint an arbitrator.
 
 ANALYSIS
 I. Validity of the Arbitration Clause
 
 8
 ATSA argues that arbitration should not be compelled because the arbitration clause in its agreement with Cairo does not designate either the governing law or the forum for arbitration. ATSA's argument has no merit.
 
 
 9
 The validity of an arbitration agreement affecting commerce is determined by federal law. Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 43 (3d Cir.1978); Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1211 (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); cf. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57, 77 S.Ct. 912, 917-18, 1 L.Ed.2d 972 (1957). Under federal law, when parties agree to submit disputes to arbitration, it is presumed that the arbitrator will be authorized to determine all issues of law and fact necessary to resolve the dispute. Ormsbee Development Co. v. Grace, 668 F.2d 1140, 1146 (10th Cir.1982); Continental Materials Corp. v. Gaddis Mining Co., 306 F.2d 952, 954 (10th Cir.1962). Thus, the arbitrator has authority to determine the applicable law. Moreover, 9 U.S.C. Sec. 4 authorizes the district court to order that arbitration take place within the district. See Econo-Car International, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391 (3d Cir.1974).
 
 II. Waiver of the Right to Arbitration
 
 10
 A. Alleged Failure of Cairo to Name an Arbitrator
 
 
 11
 ATSA contends that Cairo waived its right to arbitration by refusing to nominate an arbitrator when ATSA first requested arbitration in December 1980. Cairo, on the other hand, contends that ATSA did not make a bona fide effort to invoke the arbitration clause. A dispute about a waiver of arbitration may properly be referred to the arbitrator. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir.1965). Therefore, the court did not abuse its discretion when it referred the issue of waiver to arbitration.
 
 
 12
 B. Cairo's Participation in Pleading and Discovery
 
 
 13
 ATSA also contends that Cairo waived its right to arbitration when it filed pleadings and engaged in discovery before seeking arbitration. Under the federal policy favoring arbitration, a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision. E.g., Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir.1968). Moreover, inconsistent behavior alone is not sufficient; the party opposing the motion to compel arbitration must have suffered prejudice. Shinto Shipping Co. Ltd. v. Fibrex & Shipping Co., Inc., 572 F.2d 1328, 1330 (9th Cir.1978); Michael v. SS Thanasis, 311 F.Supp. 170, 181 (N.D.Cal.1970). Here, ATSA asserted its claims against Cairo in cross-claims filed on June 25, 1981. In August 1981, Cairo filed its answer asserting the arbitration clause in its written agreement as an affirmative defense. Cairo then moved to compel arbitration. ATSA has not shown that it was prejudiced by any of Cairo's actions that may have been inconsistent with arbitration. See, e.g., Martin Marietta Aluminum, Inc. v. General Electric Co., 586 F.2d 143 (9th Cir.1978); Germany v. River Terminal R. Co., 477 F.2d 546 (6th Cir.1973).
 
 III. Scope of the Arbitration Clause
 
 14
 ATSA also asserts that its claims against Cairo arise out of a separate oral agreement for repair of the machinery and that the oral agreement did not have an arbitration provision. Determining what claims fall within the class of disputes governed by an arbitration agreement is a question of federal law. Becker Autoradio, 585 F.2d at 43. Arbitration clauses are to be liberally construed, and any doubts about the scope of an arbitration clause are to be resolved in favor of arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960); Becker Autoradio, 585 F.2d at 44. We conclude that the dispute between ATSA and Cairo is related to their written agreement, which has an arbitration clause. That clause should therefore govern the instant dispute.
 
 
 15
 IV. The ATSA-Cairo Agreement and the District Court's Order
 
 
 16
 ATSA argues that the district court exceeded the scope of the arbitration agreement when it ordered nomination of "neutral, disinterested" arbitrators. Generally, partisan arbitrators are permissible. E.g., Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 284 F.2d 419, 421 (2d Cir.1960). Parties nominating partisan arbitrators, however, cannot use the services of the International Chamber of Commerce ("ICC"). Fertilizer Corporation of India v. IDI Management, Inc., 530 F.Supp. 542, 543 (S.D.Ohio 1982) (citing affidavit of Robert W.M. Thompson, solicitor of the Supreme Court of Judicature of England and Wales and former Secretary General of the ICC Court of Arbitration). The ATSA-Cairo contract provides that the parties will select an arbitral panel without recourse of the ICC unless they are unable to agree upon an umpire. Under 9 U.S.C. Sec. 5, the parties' method of appointing arbitrators must be followed. We conclude that the district court's order must be modified to allow ATSA and Cairo to attempt arbitration as they originally contemplated, i.e., using two partisan arbitrators and one umpire. If they cannot select an umpire, they may then be required to proceed under the ICC rules, which require neutral arbitrators.
 
 
 17
 V. Abulhassan and the District Court's Order
 
 
 18
 Abulhassan cannot be ordered to submit to arbitration because his separate contract with Cairo does not have an arbitration provision. United Steelworkers, 363 U.S. at 582, 80 S.Ct. at 1352. Nor can he be required to arbitrate on the basis of the agency relationship that existed between him and ATSA because Abulhassan disclosed that relationship to Cairo. Interocean Shipping Co. v. National Shipping & Trading Corp., 462 F.2d 673, 677-78 (2d Cir.1972). If ATSA was the alter ego of Abulhassan, he might be bound by the ATSA-Cairo contract, cf. Farkar Co. v. R.A. Hanson DISC, Ltd., 441 F.Supp. 841 (S.D.N.Y.1977), modified, 583 F.2d 68 (2d Cir.), aff'd as modified, 604 F.2d 1 (2d Cir.1978), but such a finding would require a trial. Cf. A/S Custodia v. Lessin International, Inc., 503 F.2d 318, 320 (2d Cir.1974).
 
 
 19
 Thus, the question is whether the district court abused its discretion when it stayed Abulhassan's action. A trial court has authority to stay proceedings in the interest of saving time and effort for itself and litigants, Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936), but in doing so should consider whether arbitration will conclude in a reasonable time. Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., 339 F.2d 440, 442 (2d Cir.1964). Accordingly, if Cairo and ATSA do not arbitrate their dispute with reasonable diligence, then the district court may be called upon to re-examine its stay order as it pertains to Abulhassan's action.
 
 
 20
 The district court's order is vacated in part. The case is remanded to the district court for revision of the arbitration order (1) to allow ATSA and Cairo an opportunity to appoint two partisan arbitrators and one umpire, provided that if they cannot agree on an umpire, then they will be required to proceed under ICC rules and use neutral arbitrators, and (2) to remove Abulhassan as a party to the arbitration.
 
 
 21
 AFFIRMED IN PART, VACATED IN PART and REMANDED.
 
 
 
 *
 Hon. Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 By published order, 690 F.2d 163 (9th Cir.1982), the appeals were withdrawn from submission until November 12, 1982, to permit the parties to settle their differences. By supplemental order, submission was again deferred until December 13, 1982. The parties, however, were unable to settle their differences. The matter was resubmitted for decision on December 27, 1982
 
 
 [2]
 Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). The "Enelow-Ettleson" rule provides that an order staying "federal court proceedings pending determination of an equitable defense is an injunction appealable under 28 U.S.C. Sec. 1292(a)(1) if the proceeding stayed was an action that could have been maintained as an action at law before the merger of law and equity." Wren v. Sletten Constr. Co., 654 F.2d 529, 533 n. 2 (9th Cir.1981)